We'll move on to the number three case of today United States against Tuggle Appeal number 20 2352 And we have Miss Pham who will be arguing And we're waiting for mr. Keenstra And hello to mr. Palmer as well Miss Pham you're uh, are you just finishing up at Notre Dame? Yes, we had our last class yesterday Last class yesterday. All right. Congratulations. I See mr. Keenstra's appearing there, so Mr. Keenstra, can you see and hear us yet? Mr. Keenstra, can you hear us? I can All right, great I've called the case and we'll go ahead and hear from Miss Pham on behalf of the defense Good morning, and may it please My name is Vivian Pham. I'm a law student participating in Notre Dame Law School's appellate moot court program Under the supervision of attorney Robert Palmer. I represent the defendant. Mr. Travis Tuggle The decision of the district court to deny mr Tuggles motion to suppress should be reversed because mr Tuggle had a reasonable expectation of privacy over the whole of this movements outside of his home and that they would not be monitored by a poll camera continuously for more than 18 months First the warrantless use of poll cameras when operating for 18 months Created a detailed record of mr. Tuggles life and they were in an unreasonable violation of his expectation of privacy Now while mere visual observations do not intrude upon a reasonable expectation of privacy The poll cameras here did what was more than what could be visually observable They did more than what a nosy neighbor could see or even a trained police officer could see Miss Pham on that question Does the record reveal how high the cameras were on either of the polls either the first second or third camera? No, your honor. We don't have in the record any information about how high the cameras actually were but certainly Yes, your honor. They'd certainly be higher than than any fence that mr. Tuggle could construct There's no there's no contention here though that they were used to look behind fences as in that earlier Fifth Circuit case is there? No, your honor. There were no fences and no contention that they had to look over fences to be able to see the front Of mr. Tuggles home Would you would you agree? that just the mere The the brief use of such a camera is not unreasonable any more unreasonable than just for example Having an undercover officer climb a utility pole And observing for a few minutes so and what I'm trying to push you toward is conceding that What's actually relevant here is time not the technique Your honor. We think the time is the different is the deciding difference. However, we do Agree or we do argue that the use of the pole camera that it was able to zoom pan tilt and Create that record of 18 months in the use of the pole camera itself is Relevant and your honor the fact that it was able to record for 18 months gave law enforcement The ability to see what was happening live and then if they missed it go back in the past To pause and probe the camera's memory now while our expectations of privacy might be that we may sometimes Be watched we don't expect that We'd be watched by the government and that when they watch us they'd be able to have an unfailing memory Perfect vision and an impeccable focus and that they'd be able to keep that up for 18 months So the biggest problem that I have here of Miss fam apart from supreme court opinions that take Quite different approaches to different related fourth amendment problems Uh is the line line drawing problem that that mr. Tuggles? Argument poses um For example, does it matter whether it's a dense neighborhood or not? Does it matter whether the cameras are focused on a residence a store? a mixed-use building a multi-family dwelling um and Just how much technical capacity? Is is uh is a problem quite in addition of course to the the time Line that would have to be drawn. Can you? Suggest how we might be able to resolve those questions if we were to agree with you on the basic one Yes first i'd like to address the the temporal limitations that the court would need to decide on and then Perhaps the practical limitations about the differences that a place would make and where the camera was placed So first as to the temporal limitations We sympathize with the court but the decision they'd have to make here is not easy But both the supreme court in jones and carpenter Did not specifically give a temporal limitation or draw a line in which a time period Would be would make a search unreasonable and we don't think the court needs to hear We think that it's enough to say that certainly 18 months of data  As to the particulars of the place in which The cameras are placed. We think the difference here Is that the cameras the poll cameras targeted a specific individual outside of their home? In that respect it's also different than any regular security camera So security cameras aren't targeted to a specific individual and they don't create that Comprehensive record that reveals our patterns and associations Like a poll camera does they're not surveilling an individual in their daily private life suppose we had a local police department that said We're troubled by crime in our downtown area and we're going to install a lot of cctv cameras Much like it was for example in the united kingdom And we're going to set up recording devices for all this. We've got the the memory is cheap Technology is not uh, not unaffordable. So We're going to put the whole town that I would think that would be more troubling to you rather than less Respectfully your honor the fact that the poll cameras targeted a specific individual Is more troubling and that's because it created a record that showed a comprehensive and detailed record of one Individual's life a camera just outside any government building or any other place wouldn't reveal those Comprehensive details they reveal snippets of information snippets of events Any record they gather might be anonymous and disjointed as opposed to specifically targeted and continuous And moments or events seen in isolation Raise different concerns than long-term surveillance So the supreme court in jones and in carpenter expressed concern that long-term monitoring Could reveal a record that was detailed comprehensive and effortlessly compiled revealing our sexual habits our political or even religious beliefs And it reveals information like when we spend the night at home who we spend the night with How long they stay there what items we carry what packages get delivered to our door until day in and day out The government is able to essentially track our lives In isolation again, these events might not mean much but together These slices and moments and events in our lives create a mosaic Revealing to the government our patterns and associations of our lives Miss fam, obviously you were not trial counsel uh, but um It is apparent from the two motions for reconsideration after the judge's ruling that this issue meant a lot to the defense Yet there was a stipulation to the evidentiary to the evidence That had been presented and no evidentiary hearing requested Can you elucidate on that at all or give us any thoughts? Uh Your honor, I don't know specifically why no evidentiary hearing was requested But despite the fact that there was no evidentiary hearing we do think that there is enough information from the information known That to rule that 18 months of surveillance by a poll camera outside of mr Tuggles home was a search that required a warrant And furthermore your honor practical limitations here or the lack of practical limitations here are relevant In kylo, the court noted that courts must assure To protect and preserve the degree of privacy against the government that existed when the fourth amendment was adopted Justice alito in his concurrence in jones noted that in the pre-computer age the greatest protections of our privacy Were neither constitutional Nor statutory They were practical So to preserve that degree of privacy that existed when the fourth amendment was adopted The court should take into consideration how poll cameras are able to circumvent those practical limitations So for example the gps surveillance in jones was able to circumvent practical limitations Because it was cheaper than physical surveillance and because by design how would how would that argument apply? To the government for example obtaining a dna sample from a disposed coffee cup Suspect your honor, we don't We don't argue that tech using technology that could make a government's law enforcement's job easier or more efficient Should be caught constitutionally suspect that it always requires a warrant But we think that the lack of practical limitations here are relevant because practical limitations Force law enforcement to make decisions. They force law enforcement to decide Who they want to watch? how long they are going to watch them and Decide what evidence they'd expect to find But here with relative ease law enforcement are able to fashion a camera atop a light pole and leave it there for 18 months For some reason or for no reason at all Miss pham, are you suggesting a bright line rule like 90 days? Respectfully your honor. We don't suggest a bright line rule We think though that 18 months is certainly a long enough sufficient time That the court could say that 18 months was an unreasonable invasion of mr Tuttle's privacy and the court in jones also noted that four weeks Was an unreasonable and lengthy monitoring the court in carpenter Although the cameras suggested that it gathered 127 Days of data that seven days of gathering that cell phone location data Was an unreasonable search. So we think that's certainly Do we know whether this camera captured more than mr. Tuttle's house? Your honor, we know that it captured intimate details and events of his life such as we know that I understand his Does it capture the neighbor too? Your honor the third camera in specific captured part of the neighbor's home It was his co-defendants who who had a storage shed next to his house So we know that captured that storage shed, but the other two cameras were pointed at mr. Tuggle's home or the outside of his home Well, you recognize as I think judge hamilton was suggesting that in major metropolitan areas there are now increasingly cameras in in neighborhoods that are Permanently for all intents and purposes installed Would you question their continuous use that captured individuals like in this case, mr. Tuttle and Perhaps another dozen or two dozen more on the block Your honor while we do expect that we may be watched sometimes By neighbors by third parties or other people. We don't expect that it'd be the government that watches us And that's the difference here we might expect that for example when we consent to When we have a house our neighbors might be able to see some things that we do outside of our home But the difference is that we don't choose for the government to watch us and therefore we don't expect That they do if the government if the government watched You enter the lobby of this courthouse Because you wish as a member of the public To view a court proceeding Would that be an invasion of your privacy? No, your honor because first that's a limited intrusion of just us One person walking in at one time and the supreme court has differentiated limited intrusions from long-term surveillance That intrude upon different expectations of privacy And second of all your honor in this case the poll cameras operated for more than 18 months Seeing an intimate window that created a comprehensive Continuous and detailed record of mr. Tuggle's life Now for the foregoing reasons because mr. Tuggle had a reasonable expectation of privacy. We ask that this court respectfully respectfully Reverse the district court's denial of mr. Tuggle's motion to suppress And if there are no more questions, i'd like to reserve the remainder of my time for rebuttal Thank you very much. Mr. Pham Mr. Keenstra for the government May it please the court good morning. Your honors. My name is jeff kinstra and I represent the united states Law enforcement officers did not conduct a search subject to the fourth amendment By using cameras to record visual observations of things openly apparent to the public Much in the same way, for example That a neighbor might have both seen and recorded all these same sorts of things with the home security camera In short the officers saw only what was visible to the public And they did so using only the same sorts of tools that are available to and in widespread use by the public at large In doing so they didn't infringe on any reasonable expectation of privacy so they didn't conduct a search Now when it comes to searches and visual observations in particular Law enforcement stands at least in the shoes of the public at large so for example in serrallo Because the public at large can can fly overhead in an airplane and it's accepted in society that the public does that So can law enforcement officers? Likewise, for example in the knock and talk cases that because the public at large can approach a house and knock on the front door So can law enforcement officers do that even when their purpose is law enforcement and investigative related instead of just a casual Observer and the reason for that is that What the public at large can do is what defines? The the rights of privacy that you have and whether society would view that as reasonable So in framing this issue the question isn't whether you have an expectation that law enforcement in particular Is doing something or seeing something? But whether you have an expectation that society at large or at least a significant portion of society Could not be seeing or doing those things And I think that's really where Mr. King Um I don't know how I would have voted on the jones and carpenter issues if anybody had asked me At the time before before those were decided but those were um The government was making in essence much the same arguments there in those cases that the technologies did not Reveal any information that was not Also exposed to the public by those suspects Um, and the court said no it it took a pretty different approach at least well the concurrences in jones and the uh, and the majority in uh in carpenter in looking less at the techniques that were used and more at the Just the sheer volume that modern technology Um allowed the government to collect about people um That's that's why i'm i'm struggling for example Then with the reliance on just the the beeper or or one officer going up to knock and talk on one occasion as opposed to Camping out on the on the front porch Sure, and I think the simplest Way to distinguish that from this case is that officers did nothing that wasn't equally available to the public So the defendant has a conception of a nosy neighbor. For example as someone who's periodically looking out their windows But in today's society, the reality is that nosy neighbors have cameras And so a nosy neighbor with a camera could not only see these things but could record them and could do so continuously query, mr There's a distinction in why the word warrant comes to mind to people in some of these circumstances between a individualized or particularized placement of a recording device vis-a-vis Mr. Tuggle And something that's more broad-based like a camera over intersection checking Speed or a video doorbell that might be across the street Those are not particular to toggle in the way that this was can you address that? Yeah, I think that's true But the supreme court has held that the targeted nature Of an investigation is really irrelevant and the supreme court addressed that in particular in serralo In footnote 2 in the accompanying paragraph Where it said that it made no difference that there the officers weren't just members of the general public flying overhead They were on a specific mission to detect marijuana in particular And not just to fly overhead and see what they see but to see it at this particular property and the supreme court held that that made no difference at all because Members of the public could have equally flown overhead and done what law enforcement was doing And I I guess to get at the the concern there about jones and carpenter, especially I think the key to understanding carpenter is that what officers actually obtained there Wasn't just the person's location. It wasn't observations of his location It was his cell records and those cell records which contained the the cell site location information Those were never made available to the public. Those weren't visible to the public at large and so I think no, but the point the point of of the the comparison is not the specific technique used but That They simply substituted for Uh what a surveillance team could have could have discovered by watching the defendant's movements, right? I mean, I think that is a correct distinction But I think the supreme court has also clarified in Cases like kylo that the fact that you can access things in one lawful way doesn't mean doesn't give you license to Conduct a search So the example in kylo was that you could camp out across the street from a house year round If you wanted to know who's living inside But that doesn't give law enforcement officers license to barge inside to see who's there and I think it's the same issue here that the you know The camera's captured only visual observations only in the same sense that a passerby might have seen these things that someone walking on the sidewalk Could have or that even a neighbor with a security camera might have seen all these same things so so I don't think That you know Really distinguishes it from what the members of the public at large could have done And I think that is very different and an important distinction from jones and carpenter. Do we have to worry? about for example Pole cameras with infrared capacity With telephoto lenses Connected using artificial intelligence and facial recognition software I think there are problems that could arise with those sorts of technologies certainly In kylo if they're using sort of heat, you know thermal detection technology where they're seeing something inside of a house I think that's a very different case. Certainly. That's not what happened here In terms of facial imaging technology, I think that's another very difficult question But I think that the search if there was one would occur when the images are captured Not when the police go back and process it so I think that's you know a difficult question  i'm, not entirely sure how it would shake out, but I think it's a question that this case doesn't because Again, the technology that officers use Is something that's in general public use so this isn't You know some new advanced technology that's uniquely in their possession like it was in kylo where they're using a thermal image or To see inside the house in a way that members of the public couldn't um I To get to that point though. I think there are limiting principles here In the in the context of this case the time isn't a limiting principle because it wouldn't have limited a member of the public but The first limiting principle is what officers are able to see so if they're seeing things that are equally available to a passerby It's not going to be a search. But if they're looking in inside windows inside fenced in backyards, that's a different concern Um, and then the second leading principle is if they're doing that are they doing it in a way that a member of the public Couldn't do equally and I think that the cases that sort of bracket that analysis are Carpenter on the one or i'm sorry serrano on the one hand and not and kylo on the other And serrano they're flying overhead in an airplane just the same as a member of the public could so that's acceptable Even though they're the defendant did have a fence erected in his backyard Which blocks view from some portions of the public? Conversely in in kylo, they're using a technology that was not widely available to see inside a house Um, so I think really those two factors are what what do provide the limiting principles here But neither is always i'll be worried. I've got to say i'll be worried if Uh, if lowe's starts selling, uh, infrared security cameras If your argument may take us I I think that's a fair point but at the same time there's a degree to which the advancing technology inherently affects the Expectations of privacy that we have as against society at large And so as kylo explains Airplanes are a great example of that that there was a time where you could erect a fence around your your yard And be pretty sure that no one is flying overhead and seeing you but of course now that the public Can fly overhead we don't have that same expectation of privacy. So I understand the concern that Innovation and technology can pose problems But I think as long as law enforcement isn't advancing beyond what the general public can do They're not infringing upon any reasonable expectation of privacy that the person has as against the public And so they're not they're not conducting a search And the I think the legitimate concerns that arise there would have to be Addressed through legislation through constitutional amendment and those sorts of means Um I think that the the court as I've addressed a bit didn't create a categorical Rule that a person has the rights of privacy against law enforcement learning certain types of information about them I think that would be a pretty radical rule Um, and and I think the the fact they were accessing the information through the cell records is really important there There are of course many other distinctions that the information officers accessed was otherwise unknowable. It literally could not have been Compiled by the public by law enforcement because the person was going through public and private areas That's not here where the case here where the district court found as a matter of fact that Everything that the cameras reported was openly apparent and visible to the public I think there's also a distinction where jones and carpenter both address movements through public And there are practical difficulties certainly of following a person around through public Especially when they're going both through public and private areas But that concern just doesn't apply to observations of a fixed set location Where it could easily fall within frame of a camera and be accessed by by any member of the public I think that the retrospective nature is important as well, which isn't a factor here It was effortless and carpenter for the officers to obtain those records This investigation was anything but effortless for a significant amount of time Law enforcement officers were watching these in real time. So they weren't just compiling them and going back Of course that was why it was valuable to them that it gave them real-time observations, but you know, you don't think that's Decisive here though. Do you? No, it's not decisive but it is a factor that distinguishes this case from carpenter Um, and is there any other questions about the search? I'd like to briefly address the good faith exception And I'd like to make three points time permitting. The first one is that the argument is properly before this court The defendant hasn't argued forfeiture And so he's waived that argument and in any event the government did present the core of this issue to the district court Which was that? appellate precedent authorizes this activity Second we're not asking to extend appellate precedent just to apply it Of course, the supreme court has held repeatedly that visual observation is no search at all That warrantless surveillance of a home is lawful and in fact in in kylo the court even explained that it would be perfectly acceptable for law enforcement officers to Conduct year-round surveillance of a home So that those a reasonable officer could believe that those holdings which are of course binding appellate precedents authorize this this activity and last I just note that even if This court were to find that davis doesn't cleanly fit this these circumstances Davis was but one of many contexts in which the supreme court has weighed and applied The two competing concerns that govern the exclusionary rule And those are first that the sole purpose is deterrence so officers have to be particularly culpable And second that deterrence has to outweigh The social costs which are significant because of course in his seeking to suppress evidence The defendant's seeking to to distort the truth-finding function of a trial by excluding relevant and reliable evidence of his criminal activity and Eventually or ultimately is seeking to escape accountability and subject to the public to to his Misconduct so even if Davis didn't cleanly apply here the supreme court's holdings Which are broad if not addressing this very exact context Along with the circuit holdings which uniformly in these circumstances have approved the use of poll cameras that didn't see into any protected areas would allow a reasonable officer to believe that That this conduct was was lawful under those precedents So the deterrence value would be nil and that would not be sufficient to overcome the social costs Unless there are any other questions, uh, we ask you to affirm the judgment of the district court Thank you very much. Mr. Keenstra Thank you. Let's see. Ms. Pham. You uh have an opportunity for rebuttal Yes, your honor i'd like to address two points on rebuttal first I want to touch on the difference between limited Limited intrusions that the supreme court has held to be reasonable and long-term surveillance So this case is distinguished from short-term surveillance that the supreme court has held to be reasonable In serrano the court upheld the constitutionality of a plane taking pictures over the defendant's backyard within the time span of a flight In dow chemical it was the same They upheld the constitutionality of an aerial photographer who flew by took pictures within the span of a flight And again in knots the court upheld the constitutionality of the limited use of a radio transmitter Which sends radio signals commonly known as a beeper? Over the course of a day to confirm that the defendant was meeting his co-defendant at one location Those were limited intrusions but prolonged surveillance of 18 months is different because it reveals our patterns and associations Therefore we respectfully ask this court to reverse the district court's denial of mr. Tuggle's motion to suppress miss fam Did you get to both of your points? I did not your honor Yes, your honor the second was that long-term Surveillance reveals different information our patterns and habits that the public could not see So in carpenter, even though it gathered records and data from cell phone companies The government and the public could have seen where the defendant went they could have followed him around They could have followed everywhere. He went and known where he went But the difference is that doing so would be impractical to the point of impossibility Here too. It's the same having a nosy neighbor All right I think we have the point. Thank you very much. Ms. Pam Our thanks to uh to both counsel for the very helpful presentations in your briefs and the oral argument um And with that the case is taken under advisement